The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional:
FINDINGS OF FACT
1. On June 26, 1991, while using a table saw to rip needed shingles, plaintiff's dominant right hand was caught in the saw's blade. This accident resulted in portions of his little and ring fingers being amputated. This injury for which compensation is claimed is compensable in that it arose out of and in the course of his employment with defendant A. B. Hunter's outdoor wood furniture manufacturing/sales business. This is the case due to the reasons stated in the Deputy Commissioner's prior Opinion and Award as to plaintiff being an employee rather than an independent contractor with the business.
2. There is no credible or convincing medical or lay evidence that plaintiff's injuries were a proximate result of his intoxication.
3. After initially being seen at the local emergency room plaintiff was transported by helicopter to Duke University Medical Center, where his primary treatment was rendered by Dr. James R. Urbaniak, Chief of Orthopedic Surgery. This treatment involved transposition of the little finger to the ring finger.
4. As a result of the injury by accident giving rise hereto, plaintiff was totally incapacitated from working during the period from June 26, 1990 until November 17, 1990 when Dr. Urbaniak released him to return to work. Plaintiff has since been able to resume carpentry work. As indicated by his responses to defendant's Request for Admissions, plaintiff admits that he received compensation from defendant-employer for his June 26, 1990 injury in the following amounts: $250.00 on June 30, 1990, $250.00 on July 6, 1990, $250.00 on July 20, 1990, $322.00 on July 30, 1990, $90.00 on August 3, 1990, $295.00 on August 13, 1990, $250.00 on August 16, 1990 and $306.00 on August 24, 1990. This sums to a total of $2,013.00, which was not due and payable under the Workers' Compensation Act because of defendant's denial of the involved claim, and thus entitles defendant to a credit against any Award of temporary total disability benefits pursuant to the provisions of G.S. 97-42.
5. As a result of the involved injury plaintiff retains a 100 percent permanent partial disability of the right little finger and 75 percent permanent partial disability of the right ring finger.
6. Based on the $4,545.00 earned during his approximate 3 month period of employment (computed by deducting the $2,013.00 he was paid following his injury from the $6,558.00 in earnings for the year 1990 shown on the Form 1099 provided by defendant-employer) plaintiff earned an average weekly wage of $378.75 at the time of his injury.
7. For the reasons more fully hereinafter described corporate defendants Curricorp, Inc. and Backwoods, Inc. were both operated by A. B. Hunter as shams to avoid personal liability for his failure to provide the coverage required by the Workers' Compensation Act for employees of these corporations.
8. The same A. B. Hunter was the sole owner, sole stockholder, sole officer and operator of both corporations, which he claims had no employees. Rather, he claims that everyone involved in the common enterprise of manufacturing and selling outdoor wood furniture other than himself were independent contractors not subject to withholding of taxes and social security. There is no convincing evidence that either corporation ever paid any dividends, and A. B. Hunter only received a minimal salary from each corporation, one that covered his bare minimal expenses. Not only were there no other officers in any way involved or functional in the business operation of either corporation, but there was no evidence that any of the corporate directors were in any way involved or functional in their business operation. After the original organizational meetings, there were never any type of corporate meetings. Neither corporation owned the property on which the outdoor wood furniture manufacturing and sales business was operated nor owned any of the vehicles or equipment used in the same business. Rather, A. B. Hunter owned the above-mentioned vehicles and equipment as well as the property, lived on the property and allowed the two corporations to use it without charge, which is certainly contrary to their being a separate corporate existence as opposed to one under the complete domination and control of A. B. Hunter.
9. Both corporations were under-capitalized because Mr. Hunter was forced to dissolve them in 1991 for economic reasons. Neither corporation had adequate insurance because they did not provide coverage under the Workers' Compensation Act for their more than 100 employees. Further, there was no convincing evidence that they provided group health insurance, which is certainly contrary to normal business practices of corporations with as many as 100 or more employees.
10. Mr. Hunter ultimately sold the property on which he operated his outdoor wood furniture manufacturing and sales business as well as his equipment. Although both corporations were dissolved in 1991 (when he sold his property and equipment), Mr. Hunter continues to operate the same type outdoor wood furniture manufacturing and sales business — albeit on a smaller scale and in a different location up the road from his former one. Instead of owning the property and equipment, Mr. Hunter either leases or rents it, but nonetheless still has a trailer at the new site with the words "Backwoods, Inc." on it.
11. A. B. Hunter personally exercised complete domination and control of the two corporations and all of the employees, whom he claimed to be independent contractors. Further, A. B. Hunter, either personally or in his corporate capacity, knew or should have known about his statutory duty to provide workers' compensation insurance for the more than 100 people employed by his outdoor wood furniture manufacturing and sales business.
12. A. B. Hunter, as sole owner and operator of Curricorp, Inc. and Backwoods, Inc., attempted to use a corporate structure to avoid personal liability for his failure to provide the required workers' compensation coverage covering the June 26, 1990. This failure thereby caused plaintiff to unjustly suffer due to his inability to recover benefits under the Workers' Compensation Act because of the insolvency of both corporations.
* * * * * * * * * * * * * *
Based upon the findings of fact as found by the Deputy Commissioner and adopted by the Full Commission, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. On June 26, 1990 plaintiff sustained an injury by accident arising out of and in the course of his employment by defendant employers. G.S. 97-2(b).
2. There is no credible or convincing evidence that the involved injury was a proximate result of plaintiff's intoxication. G.S. 97-12(2).
3. As a result of the injury by accident giving rise hereto, plaintiff was temporarily totally disabled from June 26, 1990 to November 17, 1990, entitling him to compensation at a $252.51 per week, subject to defendant-employer being entitled to a credit for the $2,013.00 in compensation benefits paid during the same period, which were not due in payable under the Workers' Compensation Act by virtue of defendant employer's denial of liability under the Workers' Compensation Act. The dates and amounts are set out in the above findings of fact. G.S. 97-42.
4. As a result of the same injury plaintiff retains a 100 percent permanent partial disability of the right little finger and a 75 percent permanent partial disability of the right ring finger entitling him to a 38.75 weeks of compensation at a rate of $252.51 per week commencing as of November 17, 1990. G.S. 9-31(4)(5).
5. A. B. Hunter, through his domination of corporate defendants Curricorp, Inc. and Backwoods, Inc., caused said corporations to neglect and fail to perform their statutory duties to plaintiff by obtaining Workers' Compensation insurance covering his June 26, 1990 injury. This failure thereby caused plaintiff to unjustly suffer the inability to recover the compensation benefits due him under the Act; therefore, A. B. Hunter is personally liable as the alter ego of the same corporations.Postell v. B. D. Construction Company, 104 N.C. App. 1,411 S.E.2d 413 (1992).
* * * * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendant A. B. Hunter shall pay plaintiff, on account of his temporary total disability, compensation at a rate of $252.51 per week during the period from June 26, 1990 to November 17, 1990, and commencing immediately thereafter, an additional 38.75 weeks of compensation at the same rate on account of his resulting 100 percent permanent partial disability of the right little finger and 75 percent permanent partial disability of the right ring finger. These amounts are subject to a credit for the $2,013.00 in benefits that defendant-employer paid during the period from June 30, 1990 to August 24, 1990 on the dates and in the amounts set out in the above findings of fact, which were not due and payable under the Workers' Compensation Act. Such compensation having accrued the same shall be paid in a lump sum, without computation, subject to a reasonable attorney fee hereinafter approved.
2. A reasonable attorney fee in the amount of 33 and 1/3 percent of any compensation benefits that he is ultimately able to collect for his client under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same benefits and forwarded directly thereto.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendant A. B. Hunter shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including Dr. Urbaniak's treatment at Duke University Medical Center, when bills for the same are submitted in accordance with the Industrial Commission Rules.
3. Defendant A. B. Hunter shall bear the costs.
4. IT IS FURTHER ORDERED that this matter be reset on the Elizabeth City hearing docket for a penalty hearing pursuant to provisions of G.S. 97-94 and that the Attorney General's Office be notified of the same hearing because of its statutory responsibility for enforcement of any penalty.
This the __________ day of ________________________, 1996.
 S/ __________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ ___________________________ DIANNE C. SELLERS COMMISSIONER
S/ ___________________________ THOMAS J. BOLCH COMMISSIONER
JHB/nwm 11/21/96